TRINA A. HIGGINS, United States Attorney (#7349)
VICTORIA MCFARLAND, Assistant United States Attorney (#11411)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah, 84111
Telephone: (801) 524-5682

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR THE SEARCH OF:<br><br>SAMSUNG 128GB SM-G990U2 CELL PHONE, IMEI: 358677690734671, S/N: R5CTB1YWCXL,<br><br>CURRENTLY LOCATED AT 257 EAST 200 SOUTH #475, SALT LAKE CITY, UTAH 84111. | Case No. 2:23-MJ-428 JCB<br><br>Magistrate Judge Jared C. Bennett |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Special Agent Jonathan Lee, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND OFFICER BACKGROUND

1.      I make this affidavit in support on an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—a cell phone, more particularly described in Attachment A—which is currently

in law enforcement possession, and the extraction from that property of electronically stored information, more particularly described in Attachment B.

2. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since March of 2018. I am a graduate of the Criminal Investigator Training Program and ATF Special Agent Basic Training program held at the Federal Law Enforcement Training Center in Glynco, Georgia. I have received specialized training in the enforcement of federal firearm and explosive laws. My duties and responsibilities include participating in the investigation and prosecution of persons who violate federal firearm laws. As an ATF SA, I have participated in the investigations possession of firearms by restricted persons, including persons restricted as a result of illicit drug use. As a result of my training and experience as an ATF agent, I am familiar with violations occurring under Titles 18 and 21 of the United States Code.

3. Prior to working for the ATF, I was employed as a law enforcement officer for the Lakewood Police Department in Lakewood, Colorado, from March 2005 through February 2018, serving as a patrol officer, persons-related crimes detective, and patrol supervisor. As a law enforcement officer with the Lakewood Police Department, I conducted physical surveillance, interviewed sources of information and defendants, served and reviewed telephone court orders, served search warrants and arrest warrants, and investigated violations of the Colorado Revised Statutes to include firearms and

narcotics violations. In 2008, I was also certified as a Drug Recognition Expert and provided expert testimony as such in 2011 and 2012. I have testified in judicial proceedings in both state and federal courts involving prosecutions relating to violations of state and federal laws.

4. The statements in this affidavit do not contain all known information but rather only those facts believed necessary to establish probable cause for the requested Complaint. I am familiar with the facts and circumstances set forth herein as a result of a review of official reports and records, conversations with other law enforcement officers, and my own training, experience, and investigative efforts, as more fully described below.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is as follows (hereinafter "Device"):

- SAMSUNG 128GB SM-G990U2 CELL PHONE, IMEI: 358677690734671, S/N: R5CTB1YWCXL

This Device is currently located in the ATF Salt Lake City Field Office evidence vault, located at 257 East 200 South #475, Salt Lake City, Utah 84111.

6. The applied-for warrant would authorize the forensic examination of this Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

7. On April 20, 2023, ATF agents served search warrants at storage units related to Bradford Evan HOOPES. During the execution of those warrants, HOOPES arrived on scene and was detained. A Complaint was authorized and HOOPES was arrested. Subsequent search warrants for HOOPES' residence and vehicles were obtained, including a Ford F-150.

8. On April 22, 2023, ATF agents learned that local law enforcement had located the Ford F-150. The vehicle was being driven by Joshua Allen PANEK, who immediately told the officers there were firearms in the vehicle. PANEK was subsequently identified as HOOPES' roommate. ATF agents arrived and located three firearms in the vehicle, including a Barrett .50 caliber rifle, a 5.56 rifle, and a 9mm semi-automatic pistol. None of these firearms are manufactured in the state of Utah. Agents also located ammunition, drug paraphernalia, and unmarked pills throughout the vehicle.

9. PANEK was released from the scene but voluntarily returned to speak with ATF agents. PANEK said he received a call from HOOPES on April 20, 2023, wherein HOOPES instructed PANEK to remove the firearms from the residence. PANEK stated he initially took the firearms to a family member's home, but the family member did not want the firearms stored at their residence. PANEK also reported he put some of the ammunition in the truck because he intended to purchase it from HOOPES.

10. Based on the items observed in the vehicle, agents also asked PANEK about drug use. PANEK initially stated he last used fentanyl approximately one week prior. However, in a subsequent phone call, PANEK admitted he ingested fentanyl prior to his initial contact with the local law enforcement officers. PANEK indicated he went to a methadone clinic daily and would be sick without it. PANEK also stated he purchases fentanyl pills "in a normal drug deal" for $4-$10 per pill and he utilizes them to supplement the methadone for pain management, sometimes taking it multiple times per day.

11. Based on the aforementioned facts, Chief Magistrate Judge Dustin B. Pead authorized a Complaint for PANEK for a violation of 18 U.S.C. § 922(g)(3), Unlawful User of a Controlled Substance in Possession of Firearms and Ammunition. Chief Magistrate Judge Pead also authorized a warrant for a blood draw sample from PANEK.

12. On April 29, 2023, PANEK was again stopped by law enforcement in the Ford F-150. Local officers observed paraphernalia in the vehicle, including pipes, tinfoil, and baggies. ATF agents responded and interviewed PANEK. Post-*Miranda*, PANEK confirmed the information he previously provided on April 29, 2023. PANEK also indicated he would have cocaine, heroin, methamphetamine, methadone, and fentanyl in his system, along with the possibility of alcohol. The warrant for PANEK's blood was served and toxicology results are pending.

13.     PANEK also had a cell phone in his possession, which is more particularly described in Attachment A.  PANEK stated he utilized the phone to communicate with HOOPES when HOOPES requested PANEK remove the firearms from the residence on April 20, 2023.  PANEK also confirmed that the phone would contain communications relating to illicit substances.  PANEK provided the phone and passcode to ATF agents.  He also gave consent for agents to review the information contained in the phone.

14.     The Device is currently in the lawful possession of ATF based on the information referenced above.  While ATF may already have all the necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

15.     The Device is currently in storage at 257 East 200 South #475, Salt Lake City, Utah 84111.  In my training and experience, I know that the Device has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of ATF.

## TECHNICAL TERMS

16.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable

storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

  c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

  d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits

by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      e.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a

series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  17. Based on my training, experience, and research, I know that the Devices has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS, and/or PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

  18. Based on my knowledge, training, and experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable

media player, GPS navigation device, and PDA.  I also know that the Device is capable of storing information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

19.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to

draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer.

        e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21.    *Manner of execution.*  Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is

reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

22.     Based on the foregoing, I submit that this affidavit supports probable cause for a search warrant issued under Federal Rule of Criminal Procedure 41 authorizing the examination of the Device described in Attachment A to seek the information described in Attachment B.

DATED this 2nd day of May, 2023.

_____
SA JONATHAN LEE, ATF

SUBSCRIBED and SWORN BEFORE ME:

_____
JARED C. BENNETT
United States Magistrate Judge

## ATTACHMENT A
### Property to be Searched

The property to be searched is as follows:

- Grey Samsung cell phone, IMEI: 356903441002776, ATF case number 788045-23-0018, Item #23

This Device is currently located in the ATF Salt Lake City Field Office evidence vault, located at 257 East 200 South #475, Salt Lake City, Utah 84111.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B
### Evidence to be Seized

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(3), Unlawful User of a Controlled Substance in Possession of Firearms and Ammunition, and/or 18 U.S.C. § 2, Aiding and Abetting, involving JOSHUA ALLEN PANEK, including:

   a. any and all information, including receipts, invoices, purchase orders, bills of sale, and ATF 4473 Forms, whether stored magnetically, electronically or on paper, relating to the acquisition, storage, transfer, manufacturing, distribution, or other disposition of firearms and/or controlled substances;

   b. any and all information showing correspondence among or between PANEK and others, including BRADFORD EVAN HOOPES, relative to the acquisition, storage, transfer, manufacturing, distribution, or other disposition of firearms and/or controlled substances;

   c. any and all information pertaining to instructions, photos, and/or references containing information relative to the circumvention of applicable laws, rules, and/or regulations relating to the acquisition, storage, transfer, manufacturing, distribution, storage, or other disposition of firearms and/or controlled substances;

   d. any and all information related to travel or location data relative to acquisition, storage, transfer, manufacturing, distribution, storage, or other disposition of firearms and/or controlled substances, including correspondence, itineraries, receipts, location data, and/or video and photographs;

  e. any and all information regarding cash and/or proceeds related to the acquisition, storage, transfer, manufacturing, distribution, storage, or other disposition of firearms and/or controlled substances, including cash, receipts records, cash disbursement journals, ledgers, journals, and/or account books;

  f. any and all financial information relating to the acquisition, storage transfer, manufacturing, distribution, storage or other disposition of firearms and/or controlled substances, including bank account records, account statements, deposit slips, withdrawal slips, cancelled checks, records of wire transfers, purchase of bank checks, cashier checks, teller checks, traveler's checks, money orders, tax returns, and peer-to-peer payment methods.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. Records evidencing the use of Internet Protocol addresses used to communicate, including:

  a. records of Internet Protocol addresses used;

  b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.